STATE of Missouri, Respondent,

v.

Steven GILLESPIE, Appellant.

Steven GILLESPIE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 68066, 70138.

Missouri Court of Appeals, Eastern District, Division Three.

April 22, 1997.

Gwenda R. Robinson, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

CRAHAN, Presiding Judge.

Steven Gillespie ("Defendant") appeals the judgment entered upon his convictions following a bench trial of three counts of statutory sodomy, § 566.060 RSMo Cum. Supp.1993, for which he was sentenced to three consecutive terms of ten years imprisonment.[1] Defendant challenges the sufficiency of the evidence to support two of the counts for which he was convicted and seeks plain error review of the admission of certain expert testimony. We affirm but vacate the sentence imposed on Count IV and remand for resentencing on that count only.

In reviewing the sufficiency of the evidence, we accept as true all evidence and inferences favorable to the verdict and disregard contrary evidence and inferences. *State v. Brokus,* 858 S.W.2d 298, 301 (Mo. App.1993).

Defendant and Victim's mother began dating in December, 1992. In January, 1994, mother, her son, age 3, and her daughter ("Victim"), age 5, moved in with Defendant.

---

1. Defendant also appealed the judgment denying his Rule 29.15 motion after an evidentiary hearing. In his brief, however, Defendant has not identified any errors in that judgment and that appeal is therefore deemed abandoned. *State v. Gaines,* 807 S.W.2d 678, n. 1 (Mo.App.1991).

On the evening of May 12, 1994, Defendant was alone with Victim in his bedroom, watching a hockey game on television. Mother, who was in the basement, started to feel uneasy because Victim had been upstairs with Defendant too long. Mother's suspicions were aroused because Victim had told her that her "privacy" had been bothering her.

Mother tiptoed up the stairs to Defendant's bedroom. She found Defendant sitting on the edge of his bed with his hands inside of his pants. Victim was standing in front of him. Mother instructed Victim to go back downstairs. Mother then spoke with Victim, who told her that Defendant had been messing with her private part and she didn't like it.

The following day, mother questioned Victim again about what she had said the night before. Victim again told her mother that Defendant had touched her privacy and added that Defendant had told her not to tell anyone. She also said Defendant had gotten on top of her and "white stuff" came out. Victim said Defendant had put his private part in her mouth and had made her show her private part to him. She also told her mother that Defendant had played doctor with her and had reached under her nightgown and touched her private part. At trial, Victim testified that Defendant would touch her "red spot" with his finger and that Defendant had made her touch his private part.

Mother took Victim to Health Care for Kids for an examination. Victim was found to have vaginitis. The doctor showed mother the irritation and redness of Victim's vagina.

Mother returned to Defendant's home and told him about the results of Victim's examination. Defendant said that they could work things out but mother packed their belongings and moved out.

Victim was later taken to Cardinal Glennon Hospital for another examination. Victim was interviewed by a staff nurse. Victim told the nurse that Defendant had touched her private parts. She also told the nurse that her private was hurting her.

On May 18, 1994, an investigator with the Department of Family Services interviewed Victim. Victim told the investigator that Defendant had touched her "privacy parts," which she identified as her vagina. She said Defendant had touched her with his penis and finger, had rubbed his penis on her "bagina" and put his penis in her mouth. Victim recalled an incident when she and Defendant were lying on the bed and he rubbed his penis on her vagina and stuck his finger inside. She said that on another occasion when she and Defendant were playing doctor, he pulled her pants down and touched her privacy with his finger. Victim also recalled an occasion when Defendant put his penis in her mouth and something came out. She told the investigator that when Defendant put his finger in her vagina it hurt.

The investigator later interviewed Defendant about Victim's statements. Defendant told the investigator that Victim would tell him he was sexy and she wished he was her daddy. Defendant said Victim would touch him on the leg. Defendant felt Victim would become jealous of him when he paid attention to other little girls. He admitted playing doctor with Victim.

On May 24, 1994, a detective from the Sex Crime Child Abuse Unit of the St. Louis Police Department interviewed Victim. Victim told the detective that Defendant had touched her privacy and put his fingers inside her. She said Defendant had gotten on top of her and moved around while his privacy was touching her privacy. She said Defendant had showed her his privacy and asked her to touch it with her hand. The detective handed Victim a pen and asked her to demonstrate what she had to do. She indicated with her hands the act of masturbation. Victim also told the detective that Defendant put his privacy into her mouth and white stuff came out.

Defendant was charged with and convicted of three separate acts of statutory sodomy: putting his penis in Victim's mouth (Count II); putting his finger in Victim's vagina (Count III); and making her touch his genitals with her hand (Count IV). Although Defendant's first point is packaged as an attack on the sufficiency of the evidence to support Counts III and IV, it actually presents three related points, all of which involve

to some extent a change in the statutory sodomy statute between the date of the offenses and the time of trial.

At the time of his offenses, Section 566.010(1) RSMo Cum.Supp.1993 defined "deviate sexual intercourse" as used in the definition of statutory sodomy, § 566.060(3) RSMo Cum.Supp.1993, as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." In 1994, this definition was amended, effective January 1, 1995. The new definition, set forth in § 566.010(1) RSMo 1994 defines "deviate sexual intercourse" as:

> any act involving the genitals of one person and the mouth, tongue or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

■ Insofar as is relevant to this case, the principal distinction between the two definitions is that, under the new definition, hand to genital contact no longer constitutes "deviate sexual intercourse" unless it involves penetration.

■ Defendant first argues that because he was tried on February 15, 1995, more than a month after the effective date of the amended definition, his acts as charged in Counts III and IV no longer constituted deviate sexual intercourse and could not provide a basis for conviction. We disagree.

Defendant's argument is premised on a misinterpretation of § 1.160 RSMo 1994. Section 1.160 provides:

**1.160.   Effect of repeal of penal statute**

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except:

(1) That all such proceedings shall be conducted according to existing procedural laws; and

(2) That if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense prior to original sentencing, the penalty or punishment shall be assessed according to the amendatory law.

■ The plain language of this provision refutes Defendant's contention. Under § 1.160 RSMo 1994, any crime committed prior to the amendment of a penal law is unaffected by the amendment. Because the crimes at issue were committed prior to the amendment of the sodomy statute, Defendant was properly convicted under the sodomy laws in effect at the time of his crimes. *State v. LaMaster*, 811 S.W.2d 837, 839–40 (Mo.App.1991). As discussed *infra*, however, Defendant is entitled to partial relief under the provisions of § 1.160(2) RSMo 1994.

■ Defendant next contends that the evidence was insufficient to prove that he put his finger in Victim's vagina as charged in Count III. Defendant points to the fact that Victim's statements that he had penetrated her vagina were not made by Victim at trial. Rather, these statements were admitted through the testimony of the DFS investigator and the police detective, who reported what Victim had said to them about penetration. Defendant relies on *State v. Pierce*, 906 S.W.2d 729 (Mo.App.1995) for the proposition that Victim's out-of-court statements were not sufficiently corroborated to support his conviction. We disagree.

*Pierce* was a case in which the sole substantive evidence against the defendant consisted of out-of-court statements by the victim that she repeatedly recanted at trial. The court held that where a victim makes statements to authorities of improper activity but later recants, there must be other evidence to corroborate the prior inconsistent statements to support a conviction. *Id.* at 735.

In this case, Victim never recanted any of the prior statements. Nor was her testimony in any way inconsistent with anything she told the DFS investigator and the police

detective. It simply wasn't as graphic or detailed as her prior statements. Defendant makes no claim that those prior statements were inadmissible and we hold that they were sufficient to support conviction on Count III without further corroboration.

Finally, Defendant challenges the sentences imposed on Counts III and IV based on the previously discussed change in the definition of deviate sexual intercourse. There is no merit in Defendant's contention as to Count III, which charged Defendant with putting his finger in Victim's vagina. Although some hand to genital contact has been eliminated from the definition, hand to genital contact involving penetration still constitutes "deviant sexual intercourse" so the penalty remains unaffected.

■ The State concedes, however, that Defendant is entitled to resentencing on Count IV. Count IV charged only hand to genital contact, without penetration. At the time Defendant was sentenced, that conduct was redefined as "sexual contact." § 566.010(3) RSMo 1994. Sexual contact with a person under 12 years of age constitutes child molestation, first degree, a Class C felony punishable by a term not to exceed seven years. §§ 566.067.1, 558.011(3) RSMo 1994. Thus, Defendant's sentence of ten years imprisonment on Count IV exceeds the maximum that could have been imposed under the law as amended prior to his original sentencing. Under § 1.160(2), *supra*, Defendant was entitled to have his punishment assessed under the amendatory law. *State v. Helmig*, 924 S.W.2d 562, 567 (Mo.App.1996). Thus, we must vacate the sentence on Count IV and remand for resentencing under § 566.067.1 RSMo 1994.

In his second point, Defendant seeks plain error review of the admission of certain expert testimony. In a court-tried case, we presume that any inadmissible or improper evidence was not prejudicial. *State v. McMillin*, 783 S.W.2d 82, 96 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Point denied.

The judgments of conviction and sentence on Counts II and III are affirmed. The judgment of conviction on Count IV is affirmed but the sentence thereon is vacated and the cause is remanded for resentencing in accordance with this opinion.

GRIMM and HOFF, JJ., concur.